**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| MARTIN J. WALSH, Secretary of Labor, United States Department of Labor,[1] | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| M-E-C COMPANY; JOHN A. QUICK, an individual; KRISTINA ROMANOWSKI, an individual; M-E-C COMPANY RETIREMENT PLAN; M-E-C COMPANY GROUP HEALTH PLAN, | ) ) ) ) ) ) |
| Defendants. | ) ) ) |

No. 2:19-cv-1660-DCN

**ORDER**

The following matter is before the court on plaintiff Martin J. Walsh, Secretary of Labor of the United States Department of Labor's (the "Secretary") motion for default judgment, ECF No. 21. For the reasons set forth below, the court grants the motion.

**I. BACKGROUND**

The Secretary brings this action against defendants M-E-C Company (the "Company"); Kristina Romanowski, controller of the Company ("Romanowski"); and John A. Quick, president of the Company (collectively, "defendants"), pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq. ("ERISA"). The Company is a South Carolina corporation and plan sponsor and fiduciary to defendant M-E-C Company Retirement Plan (the "Retirement Plan") and defendant M-E-C Company Group Health Plan (the "Health Plan"), both employee

---

[1] Secretary of Labor Martin J. Walsh is automatically substituted for former Secretary Eugene Scalia pursuant to Fed. R. Civ. P. 25(d).

1

benefit plans within the meaning of ERISA under 29 U.S.C. § 1002(3) and subject to coverage under ERISA pursuant to 29 U.S.C. § 1003(a). The Secretary alleges that defendants failed to remit certain participant insurance contributions under both plans in violation of its fiduciary duties under ERISA.

The Retirement Plan permitted participants to contribute a portion of their pay to their retirement savings through payroll deductions. In accordance with 29 C.F.R. § 2510.3-102, participant contributions were required to be forwarded to the Retirement Plan on the earliest date on which such contributions could reasonably be segregated from the Company's general assets. According to the complaint, defendants withheld $13,578.65 in participant payroll deductions in April and May 2016, allowed those contributions to be commingled with the general assets of the company, and never remitted these funds to the Retirement Plan. Moreover, when the Company ceased operations in 2016, defendants failed to administer the Retirement Plan and have effectively abandoned it. As a result, participants have been unable to receive information about their funds or access their funds. The Secretary alleges that, as of February 28, 2020, participants have suffered $2,560.69 in lost earnings on their Retirement Plan savings from the Company's actions.

The Health Plan was funded by both participant premium contributions withheld from participants' compensation and employer contributions, which were remitted to United HealthCare Services, Inc. ("UHS"). In accordance with 29 C.F.R. § 2510.3-102, the Company was required to forward participant contributions to the Health Plan on the earliest date on which such contributions could reasonably be segregated from the Company's general assets. According to the Secretary, in May 2016, defendants

withheld Health Plan contributions totaling approximately $3,904.86 and failed to forward those contributions to the Health Plan in accordance with ERISA. UHS retroactively cancelled the Health Plan effective April 30, 2016 due to nonpayment of premiums. The Company failed to notify the Health Plan participants that the Health Plan's insurance coverage had lapsed and continued withholding employee contributions, leaving employees to believe that the Health Plan continued to insure them. As a result, the Secretary alleges that participants incurred $11,481.89 in unpaid medical claims and $724.39 in lost earnings on their Health Plan savings through February 28, 2020.

The Secretary filed the instant action on June 7, 2019. ECF No. 1, Compl. The Secretary served the complaint and summons on the Company on October 18, 2019. ECF No. 12-1. After the Company failed to file a responsive pleading, the clerk entered default on January 23, 2020. ECF No. 18. On March 9, 2020, the Secretary filed the instant motion for default judgment against the Company. ECF No. 21.[2] The Company failed to respond to the motion, and the time to do so has now expired. As such, this motion is now ripe for review.

## II.  STANDARD

Securing a default judgment is a two-step process. First, upon a defendant's failure to plead or otherwise defend within the permissible period for response, a plaintiff must file a motion requesting an entry of default from the clerk of court. Fed. R. Civ. P. 55(a). Second, where the plaintiff's claim is not for sum certain, she must "apply to the

---

[2] The Secretary initially filed the motion for default judgment against Romanowski and the Company. On April 6, 2021, the Secretary filed a motion to withdraw its motion for default judgment as to Romanowski only. ECF No. 34. The court granted the motion to withdraw on April 30, 2021, such that the court considers the instant motion for default judgment with respect to the Company only. ECF No. 37.

court for a default judgment." Fed. R. Civ. P. 55(b)(2). After a court has received an application, Rule 55 gives it great discretion in determining whether to enter or effectuate judgment, including the power to: "[ ]conduct an accounting; [ ]determine the amount of damages; [ ]establish the truth of any allegation by evidence; or [ ]investigate any other matter." Id.; see also United States v. Ragin, 113 F.3d 1233 (4th Cir. 1997).

Once the clerk has entered default against a defendant, the court, in considering the plaintiff's application for default judgment, accepts a plaintiff's well-pleaded factual allegations as true. See DIRECTV, Inc. v. Rawlins, 523 F.3d 318, 322 n.2 (4th Cir. 2008) ("Due to [the defendant's] default, we accept [the plaintiff's] allegations against him as true.") (citing Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001)). However, the defendant is not held to have admitted conclusions of law, Ryan, 253 F.3d at 780 (citing Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)), or allegations that concern only damages, Dundee Cement Co. v. Howard Pipe & Concrete Prod., Inc., 722 F.2d 1319, 1323 (7th Cir. 1983) (citing Pope v. United States, 323 U.S. 1 (1944)).

Thus, a court considering default judgment must still determine if the established factual allegations constitute a legitimate cause of action and provide a sufficient basis the relief sought. See Ryan, 253 F.3d at 780 ("The court must, therefore, determine whether the well-pleaded allegations in Appellants' complaint support the relief sought in this action."); see also Silvers v. Iredell Cty. Dep't of Soc. Servs., 2016 WL 427953, at *4 (W.D.N.C. Feb. 3, 2016), aff'd, 669 F. App'x 182 (4th Cir. 2016). "The party moving for default judgment has the burden to show that the defaulted party was properly served and that the unchallenged factual allegations constitute a legitimate cause of

action."  Harris v. Blue Ridge Health Servs., Inc., 388 F. Supp. 3d 633, 638 (M.D.N.C. 2019) (internal citations and quotation marks omitted).  If the court determines that the allegations entitle the plaintiff to relief, it must then determine the appropriate amount of damages.  Id.

### III.   DISCUSSION

The Secretary seeks default judgment against the Company, restoration of the amounts that defendants failed to remit to the Retirement Plan and Health Plan plus lost earnings, and permanent injunctive relief.  The court is satisfied that the Company was properly served and failed to file a responsive pleading.  See ECF No. 12-1.  The court is likewise satisfied that it has subject matter jurisdiction over this action pursuant to 29 U.S.C. § 1132(e)(1) and may exercise personal jurisdiction over the Company because it is based in Charleston, South Carolina and administered the Retirement and Health Plans in Charleston.  As such, in determining whether default judgment is appropriate, the only question before the court is whether the unchallenged factual allegations in the complaint constitute legitimate causes of action for violations of ERISA.

ERISA is a comprehensive statute enacted to:

protect . . .  the interests of participants in employee benefit plans and their beneficiaries . . . by establishing standards of conduct, responsibility, and obligations for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the federal courts.

29 U.S.C. § 1001(b).  ERISA imposes on fiduciaries of employee benefit plans certain duties drawn from the common law of trusts.  These fiduciary obligations are "the highest known to the law."  Tatum v. RJR Pension Inv. Comm., 761 F.3d 346, 356 (4th Cir. 2014).  Under 29 U.S.C. § 1109(a), ERISA fiduciaries are personally liable for breaches of their fiduciary duties or obligations, and, under 29 U.S.C. § 1132(a)(2), the Secretary

5

may bring a civil action against a fiduciary for such a breach. Breaching fiduciaries must "make good to such plan any profits of such fiduciary which have been made through the use of assets of the plan by the fiduciary," and courts may impose equitable or remedial relief as appropriate, including the fiduciary's removal. 29 U.S.C. § 1109(a).

The Secretary alleges that the Company violated its fiduciary duties under ERISA, specifically its duty of loyalty, pursuant to 29 U.S.C. § 1104(a)(1)(A); duty of care, pursuant to § 1104(a)(1)(B); fiduciary duty to not use plan assets for personal benefit, pursuant to § 1106(a)(1)(D); duty not to deal with plan assets in its own interest, pursuant to § 1106(b)(1); and duty not to act on behalf of a party whose interests are adverse to the plan, pursuant to § 1106(b)(2). The court addresses each alleged violation below, ultimately finding default judgment warranted in each respect.

29 U.S.C. § 1104 sets forth a fiduciary's basic duties under ERISA, as derived from traditional trust law principles. Under § 1104(a), "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." Three requirements under this general rule are relevant in this case. First, a fiduciary has a duty of loyalty and must act with the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the plan. 29 U.S.C. § 1104(a)(1)(A). Second, a fiduciary must follow a "prudent man standard of care" and act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). Third, a fiduciary must act "in accordance with

the documents and instruments governing the plan insofar as such documents and instruments are consistent with [ERISA]." 29 U.S.C. § 1104(a)(1)(D).

In addition to outlining general fiduciary duties in § 1104(a), ERISA also regards specific types of transactions between a plan and related persons, known as "parties in interest," as inherently susceptible to abuse. Of particular import in this case, 29 U.S.C. § 1106(b) prohibits plan fiduciaries from self-dealing or otherwise placing themselves in a conflict of interest situation where their loyalty to the plan may be divided. Specifically, a fiduciary may not

> (1) deal with the assets of the plan in his own interest or for his own account, [or] (2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries[.]

29 U.S.C. § 1106(b). These prohibitions are absolute. "[E]ven in the absence of bad faith, or in the presence of a fair and reasonable transaction, section 1106(b) establishes a blanket prohibition of certain acts, easily applied, in order to facilitate Congress' remedial interest in protecting employee benefit plans." Gilliam v. Edwards, 492 F. Supp. 1255, 1263 (D.N.J. 1980); see Whitfield v. Tomasso, 682 F. Supp. 1287, 1304 (E.D.N.Y. 1988); Donovan v. Daugherty, 550 F. Supp. 390, 403 (S.D. Ala. 1982).

The Court finds that the Secretary properly alleged that the Company violated its fiduciary duties of loyalty and care under § 1104(a) by failing to remit employee contributions to the Retirement and Health Plans and by commingling these contributions with its general assets. See Hammer v. Johnson Senior Ctr., Inc., 2020 WL 7029160, at *10 (W.D. Va. Nov. 30, 2020) (holding that the fiduciaries' "failure to remit employee contributions to the Plan and use of these Plan assets to pay [their] other operating

expenses from Plan assets violated their fiduciary duties of loyalty and care under 29 U.S.C. § 1104(a)"). For purposes of this motion, the court accepts the Secretary's allegations as true. Under § 1104(a)(1)(A), the Company's actions, as alleged, were not "solely in the interest of" the Retirement and Health Plans, nor did they serve "the exclusive purpose of providing benefits to participants." Rather, by failing to remit employee contributions and commingling these funds with its own assets, the Company interfered with participants' receipt of benefits to which they were entitled and served the Company's interests, at participants' expense. See Blatt v. Marshall & Lassman, 812 F.2d 810, 813 (2d Cir. 1987) ("A fiduciary breaches his § 1104 duty to a plan participant by preventing or interfering with the receipt of benefits to which the participant is entitled."). As such, the Company breached its duty of loyalty. See Frahm v. Equitable Life Assur. Soc'y of the U.S., 137 F.3d 955, 959 (7th Cir. 1998)) (internal quotation marks omitted) (finding that the fiduciary breached its duty of loyalty when it "commingled [employee health insurance premium] contributions with the general assets of the company" but "did not make premium payments under the Plan," instead "giv[ing] payroll primacy").

Under § 1104(a)(1)(B), the Company's alleged conduct did not show the care that a prudent person would take under similar circumstances. The Fourth Circuit has held that the duty of prudence requires fiduciaries to "engage in a reasoned decision-making process, consistent with that of a prudent man acting in a like capacity." Tatum, 761 F.3d at 358. "A fiduciary who has failed to pay health insurance premiums and to inform employees of a lapse in their insurance coverage has not acted as a prudent man in like circumstances but rather has violated its duty of care." Cook v. Jones & Jordan Eng'g,

Inc., 2009 WL 37376, at *6 (S.D.W. Va. Jan. 7, 2009).  An ERISA fiduciary's obligations continue until "adequate provision has been made for the continued prudent management of Plan assets."  Glaziers & Glassworkers Local No. 252 Annuity Fund v. Newbridge Secs., Inc., 93 F.3d 1171, 1182 (3d Cir. 1996) (quoting Chambers Kaleidoscope, Inc., Profit Sharing Plan and Trust, 650 F. Supp. 359, 369 (N.D. Ga. 1986)).  The obligation to ensure that fiduciary obligations will continue to be met is a component of the prudence requirement imposed by § 1104(a)(1)(B).

      The Secretary alleges that the Company failed to pay Health Plan premiums, resulting in UHS retroactively cancelling the Health Plan.  Moreover, the Company did not notify employees of this lapse but instead continued to withhold employee contribution amounts after UHS's cancellation.  As such, employees "believe[d] that the Health Plan continued to insure them," when it did not.  Compl. at 7.  Accepting these allegations as true, the Company did not act as a prudent man in managing and administering the Health Plan, but rather carelessly allowed the Health Plan to lapse and left its employees in the dark about the change in their coverage.  This carelessness amounts to a breach of the Company's fiduciary duty.  See Mira v. Nuclear Measurements Corp., 107 F.3d 466, 471–72 (7th Cir. 1997) (noting that fiduciaries' "failure to pay the health insurance premium payments" and "failure to timely inform employees of the lapse in their insurance coverage" violated the duty of care standard despite the "dire financial circumstances" the employer had faced, but ultimately holding that participants and beneficiaries suffered no economic loss and thus no harm because the plan was reinstated and outstanding insurance claims were paid); Willett v. Blue Cross & Blue Shield of Ala., 953 F.2d 1335, 1340 (11th Cir. 1992) ("Providing notice of

the discontinuation or suspension of coverage is a fiduciary responsibility; employees are entitled to prompt notice of the suspension of their plan coverage.").

Additionally, the Secretary alleges that the Company "effectively abandoned [the Retirement Plan], as a result of which participants are unable to receive information about their funds and are unable to gain access to their funds." Compl. at 6. By abandoning the plan such that employees cannot obtain information about or access their funds, the Company violated it duty to prudently manage plan assets until a subsequent fiduciary could step in. The Secretary further alleges that the Company failed to remit certain participant contributions to both plans, despite withholding these contributions from employee payroll. Overall, the Company's conduct as set forth by the Secretary does not meet the prudent man standard. Hammer, 2020 WL 7029160, at *10–11 (holding that fiduciaries did not meet the prudent man standard where they failed to pay plan premiums or inform participant of the lapse in her health insurance coverage under the plan). As such, the Secretary sufficiently alleged that the Company violated its duty of care under § 1104(a)(1)(B).

The Secretary likewise sufficiently alleges that the Company violated its duties under § 1104(a)(1)(D). The Secretary alleges that the Company failed to follow the proper remittal process under both the Health Plan and Retirement Plan. Accepting this allegation as true, the Company did not act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with [ERISA]." 29 U.S.C. § 1104(a)(1)(D). Therefore, the Secretary has set forth a legitimate cause of action for the Company's violation of § 1104(a)(1)(D). See Acosta v. Davis-Paige Mgmt. Sys., LLC, 2018 WL 1405482, at *5 (E.D. Va. Feb. 13, 2018), report

10

and recommendation adopted, 2018 WL 1400967 (E.D. Va. Mar. 20, 2018) ("The [fiduciaries] also did not act in accordance with the documents governing the [] Plans, as they did not follow the proper remittal process as required by the [] Plans . . . Therefore, the [fiduciaries] violated Section 404 of ERISA[, 29 U.S.C. § 1104(a)(1)(D)].").

The court further finds that the Company's failure to remit employee contributions to the Plan violated the prohibition against self-dealing set forth in § 1106(b). The Secretary alleges that the Company withdrew employee contributions and insurance premium payments and did not remit the same to the Retirement and Health Plans—essentially keeping those assets for its own benefit. See id. Accordingly, the Company engaged in transactions that it knew or should have known constituted transfers of plan assets to itself as a party in interest, dealt with the plan assets for its own interests, and acted on behalf of a party whose interests were adverse to the plans, their participants, and their beneficiaries. Therefore, the Secretary has properly set forth a claim against the Company for violation of the prohibition against self-dealing under § 1106(b).

Having established the aforementioned violations of §§ 1104 and 1106, the court must next determine damages. ERISA provides that a plan fiduciary that breaches its ERISA duties is personally liable (1) "to make good to such plan any losses to the plan resulting from each such breach" and (2) "to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary." 29 U.S.C. § 1109(a). Additionally, the breaching fiduciary is "subject to such other equitable remedial relief as the court may deem appropriate, including removal of such fiduciary." Id. Any recovery on an ERISA breach of fiduciary duty claim must "inure[]

to the benefit of the plan as a whole." Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 140–44 (1985); Smith v. Sydnor, 184 F.3d 356, 363 (4th Cir. 1999).

Upon review of the entire record, including the complaint and motion for default judgment, the court finds that the Secretary has provided an appropriate basis for default judgment against the Company in the amount of the unremitted employee contributions to the Retirement Plan and Health Plan, as well as lost earnings on those contributions. The court therefore grants default judgment and awards the Secretary the following amounts: $13,578.65 in employee contributions that the Company failed to remit to the Retirement Plan; $2,560.69 in lost Retirement Plan earnings through February 28, 2020; $3,904.86 in employee contributions that the Company failed to remit to the Health Plan; and $724.39 in lost Health Plan earnings through February 28, 2020.

The Secretary also requests "any additional lost earnings accruing after entry of judgment." ECF No. 21-1 at 8. The court cannot determine based on the caselaw the Secretary cites whether such an award is appropriate in this case and, if appropriate, the amount the Secretary requests. The court therefore declines to award any lost earnings in addition the amounts awarded above.

The Secretary further asks the court "to restore to the Health Plan participants all of their unpaid medical expenses incurred as a result of their breaches and/or withheld Health Plan contributions for the relevant time period, including lost opportunity costs." Compl. at 10. Specifically, the Secretary claims that, because the Company failed to remit to the Health Plan $3,904.86 in employee contributions, participants suffered $11,481.89 in unpaid claims under the Health Plan. The court does not have authority under ERISA to restore the amount of unpaid medical claims "to the Health Plan

12

participants," as the Secretary requests. The Secretary effectively seeks to impose personal liability on the Company for its participants' unpaid medical claims, a remedy not available under ERISA. See Great–West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 210 (2002) ("[P]etitioners seek, in essence, to impose personal liability on respondents for a contractual obligation to pay money—relief that was not typically available in equity."). "The only possible remedy available to the employees [for unpaid claims] under ERISA is set forth in section 1132(a)(2)." Arevalo v. Herman, 128 F. App'x 952, 957 (4th Cir. 2005). "To proceed under this section, the employees must seek to benefit the plan as a whole, rather than to seek payment of their individual claims." Id.; see Massachusetts Mut. Life Ins. Co., 473 U.S. at 142 ("A fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary."). Since the relief the Secretary seeks is payment of individual medical claims, ERISA affords no relief. See McClure v. Metro. Life Ins. Co., 2007 WL 2572246, at *3 (D.S.C. Aug. 31, 2007) (declining to award damages where the complaint only alleged injury to the individual participant and not any damages that "would entitle the plan itself to relief"). Therefore, the court declines to award damages for the $11,481.89 in unpaid claims under the Health Plan.

Finally, the Secretary seeks a permanent injunction prohibiting the Company from violating ERISA any time in the future. The Secretary specifically requests that the court bar the Company from future involvement with ERISA plans. The court has broad discretion to grant "equitable or remedial relief as the court may deem appropriate" for

breach of fiduciary duty.  29 U.S.C. § 1109(a).  In applying ERISA's remedial provisions, courts must consider whether allowance or disallowance of particular relief best effectuates ERISA's purpose—enforcement of strict fiduciary standards and promotion the best interests of participants.  Massachusetts Mut. Life Ins. Co., 473 U.S. at 158, (J. Brennan, concur.).  29 U.S.C. § 1109 specifically provides "removal of [a] fiduciary" as one such equitable remedy.

> To obtain a permanent injunction in the Fourth Circuit, a plaintiff must show:
>
> (1) that it has suffered an irreparable injury;
> (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;
> (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and
> (4) that the public interest would not be disserved by a permanent injunction.

Christopher Phelps & Assocs., LLC v. Galloway, 492 F.3d 532, 543 (4th Cir. 2007) (citing eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006)).  Based on the facts before the court, the balancing of harm to the parties and to the public interest weighs in favor of granting the injunctive relief the Secretary seeks.  The court therefore grants the Secretary's request for injunctive relief and bars the Company from acting in any fiduciary capacity with respect to any ERISA-covered employee benefit plan.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** the motion for default judgment.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**May 12, 2021**
**Charleston, South Carolina**